**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DONDIE R. FRANKLIN                                                                                              PLAINTIFF

v.                                         Case No. 2:08CV00051 JLH

ARKANSAS DEPARTMENT OF CORRECTION                                                DEFENDANT

**OPINION AND ORDER**

Dondie Franklin initiated this action against the Arkansas Department of Correction (ADC) on April 9, 2008, alleging race discrimination and retaliation in violation of his rights under Title VII of the Civil Rights Act of 1964; violation of the Arkansas Civil Rights Act of 1993; and the tort of outrage. The ADC has filed a motion for summary judgment, and Franklin has responded. For the following reasons, summary judgment is granted in favor of the ADC.

**I.**

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue*

*for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences.  *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Dondie Franklin began employment with the ADC in September 2002.  He worked as a correctional officer until a promotion in May 2007.  That same month, a representative of the Arkansas Governor's Office contacted the ADC's Internal Affairs Department regarding an allegation of inmate abuse at its East Arkansas Regional Unit (EARU) in Brickeys, Arkansas.  The Governor's Office said that it had received a complaint from the mother of Michael Butler, an inmate, saying that her son had been abused by unit officers.

The EARU's assistant warden then gave to Internal Affairs a letter from Butler detailing the alleged abuse.  In his letter, Butler reported that he was physically and verbally abused on May 17, 2007.  Butler said that he and a corrections officer, Officer Brown, engaged in a verbal altercation over the fact that he had not received his medications.  Butler, who is white, said that Brown, who is African-American, cursed and made racial slurs when talking to Butler.  After Butler began responding with an equal amount of cursing, he said Brown made physical threats, to which Butler

also responded with physical threats.

Butler said that a group of officers then placed him in tight restraints and removed him from his cell. The officers took Butler to pre-lockup and then to isolation area number two. According to Butler, Lieutenant Evans, who is white, instructed the officers that they could not gang up on Butler in front of the cameras, after which the officers moved Butler to isolation area number three. Once in Isolation 3, Butler said that a female officer slapped him in the face; that he was placed in a shower stall; and that the officers beat his back, sides, and the back of his head and tried to kick him in the genitals. Butler said that the officers, who were mostly African-American, continued to yell racial slurs at him during the beating. Butler said that other officers entered the Isolation 3 area and laughed as he was beaten but refused to help him. He also wrote that he knew of other inmates in isolation who had complained of similar abuse.

On May 29, 2007, Internal Affairs investigator Cindy Courington interviewed Butler and gave him a computerized voice stress analysis examination. Courington was licensed to conduct such examinations. Courington concluded that there was no deception on Butler's part when asked about the alleged abuse on May 17, 2007. Butler also provided the names of other inmates who had complained of abuse.

On June 5, 2007, Internal Affairs investigator Raymond Naylor was assigned to investigate the allegations of inmate abuse at the EARU. Although Naylor was not licensed to conduct voice stress analysis examinations, he was assisted in his investigations by Courington. Over the next five to six weeks, Internal Affairs conducted an extensive investigation, including researching EARU records, interviewing thirty-three inmates and staff, and conducting eighteen voice stress analysis exams.

The investigation revealed that security logs showed Franklin to be present in Isolation 3 with Butler during the time of his alleged beating. Another inmate, Donnie May, reported being abused in Isolation 3, and the security logs indicated that Franklin was present during that alleged incident as well. Finally, inmate Rockmon Abdullah reported that Lieutenant Cheryl Evans, Franklin's supervisor, and other officers assaulted him and sprayed him with pepper spray in Isolation 3.

After reviewing records and other witness accounts of the alleged abuse of Abdullah, Warden Greg Harmon, an African-American, determined that Franklin and Evans had falsified their incident reports regarding the Abdullah incident. As a result, Harmon decided that Evans and Franklin should be terminated for falsifying an incident report. Six other EARU officers, in addition to Evans and Franklin, were also terminated for other offenses, and four were suspended for thirty days. Although Evans was the only white person terminated, eighty percent of the EARU correctional officers are African-American, and all other officers in Franklin's chain of command were African-American. In an August 10, 2007 termination letter, Harmon said that Franklin had violated ADC policies prohibiting "[f]alsification of written/verbal statements/information." Harmon did not list the alleged incident involving Butler as a reason for his termination.

On January 2, 2008, Franklin filed a discrimination charge with the EEOC, alleging that he was terminated because of his race and an unspecified disability. Franklin received his right to sue letter on January 10, 2008, and he filed this action against the ADC on April 9, 2008.

### III.

In analyzing Franklin's discrimination claims, the Court uses the familiar *McDonnel Douglas* burden-shifting framework. *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). Franklin must first establish a prima facie case of discrimination. *Id.* To establish a prima facie case of

discrimination, Franklin must show (1) that he is a member of a protected class; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)).  If he establishes a prima facie case, then the burden shifts to the ADC to articulate a legitimate, non-discriminatory reason for his termination, meaning that the presumption of unlawful discrimination disappears.  *Carraher*, 503 F.3d at 716 (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)).  The burden then shifts back to Franklin to show that the ADC's proffered reason is mere pretext.  *Id.*

A.   **PRIMA FACIE CASE**

The ADC concedes that Franklin has established the first three prongs of the test for a prima facie case, but it argues that Franklin has not presented sufficient evidence showing that a similarly situated employee outside the protected class was treated differently than Franklin.  For evidence on this fourth element, Franklin says that two white officers, Billy Clark and Sergeant Mallard, have both been accused of abusing prisoners in the past.  Franklin says that Clark was investigated but still works at the EARU, and he says that Mallard was never investigated despite the accusations.

The ADC counters that Clark was investigated and terminated because the abuse allegation was substantiated and he had falsified information.  Regarding Mallet, the ADC asserts that there is no record of any official complaint or allegations made against him during Harmon's tenure as warden.  In addition to his own assertions that Clark and Mallet were treated differently, Franklin offers only the affidavit of Felicia Phillips, an African-American employee at the EARU, who states that Clark and Mallet were treated differently than she.  However, in *Phillips v. Ark. Dep't of Corr.*,

2009 WL 792566 (E.D. Ark. Mar. 23, 2009), the district court granted summary judgment in favor of the ADC regarding similar discrimination claims by Felicia Phillips. In that case, Phillips, like Franklin, had argued that Mallet and Clark were similarly situated and treated differently. *Phillips*, 2009 WL 792566, at *5. The district court found that Phillips had not established that Mallet and Clark were similarly situated, stating that it was "not sufficient for Phillips to merely allege that Mallet and Clark, who are white, were accused of inmate abuse and not terminated." *Id.*

"[S]keletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact as to preclude granting summary judgment." *Thomas v. Corvin*, 483 F.3d 516, 530 (8th Cir. 2007); *see also Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1009 and n.4 (8th Cir. 1998) (stating that the plaintiff bears the burden "to produce specific, tangible evidence showing a disparity in the treatment of similarly situated employees," and that "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment"). Here, Franklin offers no more evidence that Mallet and Clark were similarly situated than Phillips offered in her case. In *Phillips*, the district court stated that there was no evidence to support her contention that her investigation was more rigorous and extensive than the investigation of the white correctional officers, noting that her white supervisor, Evans, was also terminated as a result of the same investigation. *Phillips*, 2009 WL 792566, at *5. Franklin offers essentially the same evidence, that is, mere "skeletal allegations, unsupported with specific facts." *Corvin*, 483 F.3d at 530. In addition, Franklin admitted in deposition testimony that he believed that Harmon fired him not because of his race, but because of "allegations of an inmate getting abused." Therefore, because Franklin has failed to present sufficient evidence showing that similarly situated employees outside his protected class were treated differently, he cannot establish a prima facie case

of discrimination.

**B.    PRETEXT**

Even if Franklin could establish a prima facie case of discrimination, he has not shown that the ADC's proffered reason for his termination is mere pretext for racial discrimination. In Franklin's termination letter, Harmon states that he was being terminated for falsifying incident reports relating to the alleged abuse of Abdullah Rockmon. According to the letter, Evans had used a chemical agent on Rockmon in Isolation 3, indicating that she had abused Rockmon, and Evans attempted to cover up the abuse by stating in her incident report that the chemical spray had been applied in a different area of the prison. Franklin, who was present during the alleged abuse, also submitted an incident report stating that the event occurred in a different area, rather than in Isolation 3.

Franklin argues that the differing degrees of investigation into his actions and those of Mallet and Clark evidence pretext. However, as the Court has already discussed, evidence relating to different treatment of Mallet and Clark is relevant to the fourth prong of the prima facie analysis, and Franklin's evidence regarding the investigations is conclusory and insufficient to establish either a prima facie case or pretext.

Franklin also argues that he was cleared by Richard Weiss, Chief Fiscal Officer of the State of Arkansas, meaning that the ADC's proffered reason is mere pretext. Franklin says that Weiss cleared him of falsifying his statements. Franklin misreads Weiss's ruling. After a decision in favor of Franklin from the State Employee Grievance Appeal Panel, Larry Norris, the Director of the Department of Corrections, appealed the panel's decision to Weiss. After reviewing the evidence, Weiss reversed the panel's decision and found that the ADC had terminated Franklin in a manner

consistent with agency policy. Thus, Weiss's report is in fact further evidence that the ADC's proffered reason is not mere pretext.

Finally, Franklin argues that the ADC's proffered reason is pretext because Harmon could not have honestly believed the reasons for Franklin's termination. "A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)). Franklin says that a medical examination of Butler soon after his alleged abuse showed no bruises, lacerations, or cuts to his body, and that some physical evidence of such an allegedly severe beating would have been left on his body had the event occurred as described by Butler. Therefore, Franklin concludes, Harmon could not have honestly believed that Franklin would falsify an incident report regarding inmate abuse that potentially did not occur.

Franklin's argument is misplaced. Harmon's termination letter indicates that Franklin was terminated for falsifying an incident report relating to the alleged abuse of Rockmon, not Butler. Franklin's termination letter makes no mention of Butler or his alleged abuse. The Butler incident was a motivating factor for Internal Affairs to conduct investigations into inmate abuse generally. Harmon could honestly believe—based on Butler's letter and the complaints from his mother and other inmates—that an investigation into inmate abuse generally at the EARU was justified. At the conclusion of that investigation, Harmon determined that Franklin had falsified an incident report regarding the alleged abuse of Rockmon, not Butler. Although the Butler incident may have led to the discovery of the falsified Rockmon incident report, whether Harmon honestly believed that Butler was abused is irrelevant to the pretext analysis in Franklin's case. What is relevant is whether

Harmon honestly believed, at the time of Franklin's termination, that Franklin had falsified the Rockmon incident report. Franklin has offered no evidence to show that Harmon could not have honestly believed that Franklin had falsified the Rockmon incident report. In addition to Franklin, Harmon also terminated his immediate supervisor, Evans, who is white, for falsifying an incident report on the Rockmon event. The evidence in this case shows that Harmon honestly believed that Franklin had falsified the Rockmon incident report, meaning that the ADC's proffered reason is not mere pretext.

**C.     RETALIATION**

Franklin's complaint makes a passing reference to retaliation, although it does not list a separate count for retaliation or state facts specifically supporting a retaliation claim. In his deposition testimony, Franklin alleged that the ADC retaliated against him because he had previously filed a workers' compensation claim and because newspaper articles reported that black officers, including Franklin, had abused a white inmate. In its motion for summary judgment, the ADC has briefed the issue of retaliation. Franklin has responded to the ADC's summary judgment motion on the issues of race discrimination and the state law claims, but not on the issue of retaliation.

Although Franklin filed an EEOC charge and filed suit in a timely manner, he did not allege retaliation in his EEOC charge. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)). Because Franklin did not allege retaliation in his EEOC charge, the Court need not consider that claim. *See*

*Wallin*, 153 F.3d at 688–89 (holding that the court need not consider the plaintiff's retaliation claim because he did not allege retaliation in his EEOC charge).

**D.    STATE LAW CLAIMS**

Because Franklin has failed to present sufficient evidence on his federal claims, the Court need not consider the merits of his state law claims. If the district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(c)(3). Out of deference to and respect for the courts of the State of Arkansas, this Court will exercise its discretion to decline to exercise supplemental jurisdiction with respect to Franklin's state-law claims. *Concor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that, after dismissing the federal claims, the district court should have exercised its discretion to decline pendent jurisdiction because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions"); *Roeben v. BG Excelsior Ltd. P'ship*, No. 4:06CV01643, 2008 WL 54916, at *3 (E.D. Ark. Jan. 3, 2008).

## CONCLUSION

For the foregoing reasons, Franklin has failed to present sufficient evidence to create a genuine issue of material fact on his Title VII and retaliation claims. Therefore, the ADC's motion for summary judgment is GRANTED. Document #17. Franklin's state law claims are dismissed without prejudice.

IT IS SO ORDERED this 8th day of June, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE